UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jenkins C.,[1]

        Petitioner,

v.

William Barr, U.S. Attorney General, et al.,

        Respondents.

No. 20-cv-320 (PAM/LIB)

**REPORT AND RECOMMENDATION**

---

This matter comes before the undersigned United States Magistrate Judge upon Petitioner Jenkins C.'s Petition for Writ of Habeas Corpus. [Docket No. 1]. The present case has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons discussed herein, the Court recommends that Petitioner Jenkins C.'s Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND AND STATEMENT OF FACTS**

On January 23, 2020, Petitioner Jenkins C. (hereinafter "Petitioner"), an individual in the custody of the Immigration and Customs Enforcement ("ICE") currently housed at the Carver County Jail in Chaska, Minnesota, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Pet. [Docket No. 1]).

Petitioner is currently in removal proceedings before the U.S. Department of Homeland Security ("DHS"). (Id.). Petitioner argues that his continued detention violates his due process

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration matters such as the present matter. Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

rights under the Fifth Amendment. (Id. ¶¶ 2, 4, 18, 57, 94–98). Petitioner further argues that his continued detention violates the Eighth Amendment. (Id. 99–102).

Petitioner is a native and citizen of Liberia. (E.g., Ex. A [Docket No. 1-2]; Ex. B. Docket No. 1-3]). In January 1992, Petitioner arrived at the United States border in New York, NY seeking asylum. (Pet. [Docket No. 1] ¶ 2). Immigration officials noted his travel documents appeared to be altered. (Id. ¶ 32; see also, Ex. C [Docket No. 1-4]). Petitioner applied for asylum and was granted parole into the United States. (Pet. [Docket No. 1] ¶¶ 3, 32; Ligon Dec. [Docket No. 8] ¶¶ 4–5).

In May 1997, Petitioner was arrested and charged with Fifth Degree Assault (Domestic) and two counts of First Degree Criminal Sexual Conduct. (See, e.g., Pet. [Docket No. 1] ¶¶ 4, 34; Ex. B [Docket No. 8-2]). The Fifth Degree Assault (Domestic) charge was dismissed. (Pet. [Docket No. 1] ¶¶ 4, 34; Ex. JJ [Docket No. 1-37]).

In June 1997, the Department of Justice, Immigration and Naturalization Services ("INS") terminated Petitioner's parole without adjudicating his still-pending asylum application. (Pet. [Docket No. 1] ¶ 35; Ex. D [Docket No. 1-5]).

In August 1997, Petitioner was acquitted of the First Degree Criminal Sexual Assault charges following a jury trial. (See, e.g., Pet. [Docket No. 1] ¶ 34; Ex. KK [Docket No. 1-38]). The following day, INS served Petitioner with a Notice to Appear ("NTA") and charged him with removability under the Immigration and Nationality Act § 212(a)(6)(C)(i), § 212(a)(7)(A), and § 212(a)(7)(B)(i)(II). (Ex. E [Docket No. 1-6], at 1). Specifically, the NTA alleged that Petitioner was ineligible for admission to the United States because he "used an altered Travel Certificate to seek admission to the United States," and also because "at the time of [his] application for admission to the United States, [he] w[as] not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document." (Id. at 3). Shortly thereafter,

Petitioner was granted Temporary Protected Status ("TPS"), and in September 1997, an immigration judge ("IJ") administratively closed, but did not terminate, Petitioner's removal proceedings at the joint request of the parties. (Pet. [Docket No. 1] ¶ 36; Ex. G [Docket No. 1-8]).

In September 1999, Petitioner married a U.S. Citizen, and she filed an immigration petition on his behalf in February 2000. (Pet. [Docket No. 1] ¶¶ 9, 37; Ex. H [Docket No. 1-9). In December 2000, the petition was approved. (Pet. [Docket No. 1] ¶¶ 9, 37; Ex. J [Docket No. 1-11]). In April 2002, Petitioner and his spouse were divorced, rendering Petitioner ineligible for adjustment. (Pet. [Docket No. 1] ¶¶ 9, 38; Ex. K [Docket No. 1-12]). In October 2002, Petitioner withdrew his application for adjustment of status, and, noting that Petitioner was prima facie eligible for TPS, an IJ once again administratively closed, but did not terminate, Petitioner's removal proceedings at the joint request of the parties. (See, Pet. [Docket No. 1] ¶¶ 10, 39; Ex. L [Docket No. 1-13]).

In 2004, Petitioner was convicted of DWI Test Refusal in Dakota County, Minnesota. (Pet. [Docket No. 1] ¶ 40; Ligon Decl. [Docket No. 8] ¶ 13).

In May 2016, Petitioner remarried, and his wife, who is a U.S. citizen, filed an immigration petition on Petitioner's behalf in June 2016. (Pet. [Docket No. 1] ¶¶ 11, 42; Ex. P [Docket No. 1-17]). In March 2017, the petition was approved. (Pet. [Docket No. 1] ¶¶ 11, 42; Ex. Q [Docket No. 1-18]). In July 2017, Petitioner filed an application to adjust his status. (Pet. [Docket No. 1] ¶ 11; Ex. V [Docket 1-23]).

On January 26, 2018, Petitioner was arrested in Apple Valley, Minnesota for First Degree Criminal Sexual Conduct. (Pet. [Docket No. 1] ¶¶ 13, 43). No charges have ever been brought against Petitioner in relation to this arrest.[2] (Id.).

---

[2] ICE Deportation Officer John D. Ligon merely asserts that "the Apple Valley, MN Police Department arrested [Petitioner] and charged him with criminal sexual conduct-1st degree." (Ligon Decl. [Docket No. 8] ¶ 14 (emphasis added)). However, the Government has not provided any competent or reliable evidence in support of this mere assertion that Petitioner was charged with a crime. The Government has not submitted any documentary evidence

3

On January 30, 2018, Petitioner was released from state custody, and he was immediately taken into ICE custody. (Pet. [Docket No. 1] ¶¶ 14, 44; Ex. R [Docket No. 1-19]).

On February 5, 2018, DHS moved to recalendar Petitioner's NTA, which was administratively closed in 1997 and again in 2002. (Ligon Decl. [Docket No. 8] ¶ 17). On February 12, 2018, the motion was granted. (Id.). Petitioner again renewed his applications for asylum, adjustment of status, withholding and cancellation of removal, and protection under the Convention Against Torture. (Pet. [Docket No. 1] ¶ 45).

On February 22, 2018, Petitioner appeared before IJ Ryan R. Wood ("IJ Wood"), and his attorney confirmed that he is an arriving alien. (Ligon Decl. [Docket No. 8] ¶ 18). Petitioner appeared at six hearings before an IJ between March 2018 and July 2018, each hearing was continued at Petitioner's request. (Id. ¶ 19).

On June 20, 2018, Petitioner filed a motion to terminate removal proceedings. (Ex. E [Docket No. 8-5], at 3). On July 30, 2018, IJ Wood denied Petitioner's motion to terminate removal proceedings. (Id.). On August 13, 2018, Petitioner filed a motion to reconsider the denial. (Ligon Decl. [Docket No. 8] ¶ 22). On August 30, 2018, IJ Wood denied Petitioner's motion to reconsider. (Id.; Ex. F [Docket No. 8-6]).

On August 28, 2018, Petitioner's application to adjust his status was denied. (Ligon Decl. [Docket No. 8] ¶ 23). Petitioner was granted four continuances between September 2018 and January 2019. (Id. ¶ 24).

---

indicating that charges were filed, and the unreliability of ICE Officer Ligon's mere conclusory assertion is highlighted by the fact that Petitioner's Record of Deportable/Inadmissible Alien, also attached to Ligon's Declaration as Exhibit D, indicates that Petitioner's arrest for the crime of "Sex Assault" in 1997 is "still pending" which is not consistent with the record before this Court which establishes that Petitioner was acquitted of the 1997 First Degree Criminal Sexual Conduct charges. (See, Ex. D [Docket No. 8-4], at 2). Moreover, Officer Ligon's mere assertion is contradicted by IJ Wood's statement on remand that "[t]he prosecutor's office has declined to charge [Petitioner] with a crime; the investigation is closed at this time." (Ex. K [Docket No. 8-11], at 22). Therefore, based on the present record, the Court finds that Petitioner has not been charged with any crime in relation to his January 2018 arrest.

4

On February 27, 2019, Petitioner appeared before IJ Wood, and IJ Wood denied each of Petitioner's applications for relief and ordered him removed from the United States. (Pet. [Docket No. 1] ¶¶ 15–16, 45; Ex. T [Docket No. 1-21]). IJ Wood noted that "on September 24, 2018, [Petitioner] conceded that he is removable pursuant to Section to [sic] 212(a)(6)(c)(i) and 212(a)(7)(A)(i)(I) of the Act. The charge under 212(a)(7)(b)(i)(II) was withdrawn." (Ex. T [Docket No. 1-21], at 3). IJ Wood found that based on inconsistencies in Petitioner's testimony and the record, Petitioner was not a credible witness. (See, Id. at 4–5).

On March 20, 2019, Petitioner appealed IJ Wood's decision to the Board of Immigration Appeals ("BIA"). (Pet. [Docket No. 1] ¶¶ 16, 45; Ligon Decl. [Docket No. 8] ¶ 26). On May 16, 2019, Petitioner filed a briefing extension request, and the BIA granted the request. (Ligon Dec. [Docket No. 8] ¶ 37; Ex. H [Docket No. 8-8]). On June 11, 2019, Petitioner filed a motion to remand with the BIA and provided new evidence that was previously not available to Petitioner. (Ligon Decl. [Docket No. 8] ¶ 28; Ex. I [Docket No. 8-9]).

On July 10, 2019, Petitioner filed an application for waiver of grounds of inadmissibility. (Pet. [Docket No. 1] ¶ 47). On July 12, 2019, Petitioner filed an application for adjustment of status through his spouse. (Id.).

On August 9, 2019, the BIA affirmed IJ Wood's decision in part and sustained Petitioner's appeal in part. (Pet. [Docket No. 1] ¶¶ 16, 46; Ex. Y [Docket No. 1-26]). The BIA affirmed IJ Wood's jurisdictional holding, IJ Wood's August 30, 2018, denial of Petitioner's motion to reconsider, and IJ Wood's February 27, 2019, denial of Petitioner's application for cancellation of removal. (Ex. Y [Docket No. 1-26], at 2). The BIA sustained Petitioner's appeal and vacated IJ Wood's adverse credibility finding on grounds that IJ Wood used the improper standard in making his credibility determination. (Id. at 3–4). And the BIA withheld ruling on Petitioner's arguments

5

that IJ Wood erred in denying his application for asylum. (Id. at 4). The BIA remanded Petitioner's removal proceedings for an IJ to newly determine Petitioner's credibility under the correct standard and to evaluate any new evidence that was presented on appeal. (Id.).

On August 19, 2019, Petitioner requested that ICE grant him supervised release. (Pet. [Docket No. 1] ¶ 49; Ex. Z [Docket No. 1-27]). Without any hearing, ICE summarily denied Petitioner's request without explanation. (Pet. [Docket No. 1] ¶ 49; Ex. AA [Docket No. 1-28]).

On November 26, 2019, IJ Wood denied each of Petitioner's applications for relief on remand and ordered him removed from the United States. (Ex. DD [Docket No. 1-31]). IJ Wood again noted that "[o]n September 24, 2018, [Petitioner] admitted the factual allegations and conceded the charges under INA § 212(a)(6)(c)(i) and INA § 212(a)(7)(A)(i)(I), so removability is not an issue." (Id. at 3). And IJ Wood again found that based on inconsistencies in Petitioner's testimony and the record, Petitioner was not a credible witness. (Id. at 6–9). In addition, IJ Wood denied Petitioner's motion for recusal, motion to administratively close case, and motion to place case on status docket (Id. at 15–17).

On December 19, 2019, Petitioner appealed IJ Wood's decision to the BIA. (Pet. [Docket No. 1] ¶¶ 17, 50; Ex. EE [Docket No. 1-32]). As of the date of the filing of Petitioner's Reply with this Court on March 9, 2020, Petitioner's appeal to the BIA had still not been decided. (Pet.'s Reply, [Docket No. 12], at 7).

## II.     PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner argues that his continued detention violates his due process rights under the Fifth Amendment. (Id. ¶¶ 2, 4, 18, 57, 94–98). Petitioner further argues that his continued detention violates the Eighth Amendment. (Id. 99–102). Petitioner is currently being held pursuant to 8 U.S.C. § 1225(b)(2)(A).

A. **Standard of Review**

The Supreme Court has explained that "§ 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." Jennings v. Rodriguez, 138 S. Ct. 830, 842 (2018). "[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" Id. at 836 (quoting 8 U.S.C. § 1225(a)(1)). "As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Id.

> Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum . . . or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).

Id. at 837 (alterations in original). "Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for 'further consideration of the application for asylum,' and § 1225(b)(2) aliens are in turn detained for '[removal] proceeding[s].'" Id. at 842 (alterations in original).

> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Ibid.

Id. at 837.

"'It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.' At the same time, however, [the United States Supreme Court] has recognized [a reasonable period of] detention during deportation proceedings as a constitutionally valid aspect of the deportation process." Demore v. Kim, 538 U.S. 510, 523, 530 (2003) (alterations in original) (citation omitted).

A case recently before the United States Supreme Court involved arguments similar to those presently before this Court. In Jennings v. Rodriguez, the plaintiffs argued that § 1225(b) does "not authorize 'prolonged' detention in the absence of an individualized bond hearing at which the Government proves by clear and convincing evidence that the . . . detention remains justified." 138 S. Ct. at 839. The plaintiffs in Jennings argued that such prolonged detention without an individualized bond hearing violated the Due Process Clause of the Fifth Amendment. Id. The United States District Court for the Central District of California agreed, and it entered a permanent injunction ordering the Government to provide individual bond hearings. Id. On appeal, the Ninth Circuit Court of Appeals affirmed, but did so based upon its statutory construction of § 1225(b) "as imposing an implicit 6-month time limit on an alien's detention." Id. at 839, 842–44. In so construing § 1225(b), the Ninth Circuit relied heavily on the reasoning in Zadvydas v. Davis, 536 U.S. 678 (2001), in which the United States Supreme Court construed the statute that governs detention after an order of removal has been issued:

> [The statute] mean[s] that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal," and it further held that six months is a presumptively reasonable period. After that, the Court concluded, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release the alien.

Jennings, 138 S. Ct. at 843 (citations omitted) (quoting Zadvydas, 533 U.S. at 699, 701). Citing Zadvydas, the Ninth Circuit in Jennings found a similar 6-month limitation on detention during

8

removal proceedings under § 1225(b) and 1226(c), and it held that, during removal proceedings, a detained individual "must be given a bond hearing every six months and that detention beyond the initial 6-month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." Jennings, 138 S. Ct. at 839.

The United States Supreme Court reversed in Jennings, distinguishing the statutes governing detention after an order of removal has issued, as examined in Zadvydas, from those governing detention during removal proceedings. Id. at 843–44. The United States Supreme Court held that unlike the statutes at issue in Zadvydas, "§§ 1225(b)(1) and (b)(2) . . . provide for detention for a specified time" and "detention must continue until immigration officers have finished 'consider[ing]' the application for asylum, § 1225(b)(1), or until removal proceedings have concluded, § 1225(b)(2)(A)." Id. at 844. Therefore, the United States Supreme Court in Jennings held that "subject only to express exceptions, §§ 1225(b) and 1226(c) authorize detention until the end of applicable [removal] proceedings." Id. at 842. However, because the Ninth Circuit had not reached the petitioners' argument that prolonged detention under § 1225(b) without an individualized bond hearing is unconstitutional, the United States Supreme Court remanded the case to the Ninth Circuit for consideration of those constitutional arguments on their merits. Id. at 851.

In a recent, informative decision from this District analyzing detention under § 1225(b)(2)(A), the Honorable Patrick J. Schiltz noted that most courts have utilized a fact-specific inquiry considering several factors as guidance "when weighing the lawfulness of the continued detention of an alien under the [5th Amendment] Due Process Clause." Jamal A. v. Whitaker, 358 F. Supp. 3d 853, 858 (D. Minn. 2019). The factors considered are the same as those utilized in

analyzing detention under § 1226(c).³ See, Id. Among those factors are (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal. Id. (citing Muse v. Sessions, 409 F. Supp. 3d 707, 715 (D. Minn. 2018). In Jamal A., the Court found that four of these factors weighed in favor of the petitioner and thus granted the petitioner relief. 358 F. Supp. 3d at 860.

**B. Analysis**

In the present case, application of the above factors supports Petitioner's argument that his prolonged continued detention in the instant case violates the Due Process Clause of the Fifth Amendment.

First, the length of detention "is critical to the due-process inquiry." Jamal A., 358 F. Supp. 3d at 859 (quoting Muse, 409 F. Supp. 3d at 716). In examining the length of detention, the Eighth Circuit has yet to hold what constitutes a reasonable length of detention, however, while there is no bright-line rule, other Circuits have weighed in on the issue.⁴ Although not controlling, the Third Circuit recently characterized nine months as "straining any common-sense definition of a limited or brief civil detention." Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 477

---

³ For purposes of analyzing the due process considerations presented by the instant Petition for Writ of Habeas Corpus, [Docket No. 1], the Court finds that detention under 1225(b)(2) is analogous to detention under 1226(c). See, e.g., Id. at 858–60; Lett v. Decker, 346 F. Supp. 3d 379, 386 (S.D.N.Y. 2018) ("[W]hen it comes to prolonged detention, the Court sees no logical reason to treat individuals at the threshold of entry seeking asylum under § 1225(b), like Petitioner, differently than other classes of detained aliens."); Brissett v. Decker, 324 F. Supp. 3d 444, 451 (S.D.N.Y. 2018) ("The due process considerations applicable to aliens detained pursuant to Section 1226(c) are equally applicable to [aliens] detained pursuant to 1225(b).").

⁴ The Court notes that in Ali v. Brott, 770 Fed. App'x 298, 302 (8th Cir. 2019), the Eighth Circuit recently weighed in on the reasonableness of the length of detention for criminal aliens pursuant to § 1226(a). As noted by the Eighth Circuit, however, § 1226(a) gives aliens "more protection against prolonged detention than aliens detained under § 1226(c)." Id. (emphasis in original). Likewise, § 1226(a) gives aliens more protection than § 1225(b)(2)(A). See, e.g., Jamal A., 358 F. Supp. at 858. In Ali v. Brott, unlike Petitioner in the present case, the alien had been given a bond hearing while awaiting his final removal order. See, 770 Fed. App'x at 299. Thus, Ali v. Brott is distinguishable from the present case.

(3d Cir. 2015). Similarly, the Sixth Circuit has articulated that "when actual removal is not reasonably foreseeable, . . . aliens may not be detained beyond a reasonable period required to conclude removability proceedings without a government showing of a 'strong special justification,' constituting more than a threat to the community, that overbalances the alien's liberty interest." Ly v. Hansen, 351 F.3d 263, 273 (6th Cir. 2003).

Petitioner in the present case has been detained under § 1225(b)(2)(A) for over twenty-six months without a single hearing on whether or not he is a danger to the community or likely to flee. Petitioner's detention is now substantially longer than the reasonable amount of time contemplated in Demore, which mentioned a month and a half to five months as a reasonable period of time.[5] Thus, "continued detention without [any] inquiry into its necessity becomes more and more suspect" as detention continues to extend past the time frame described in Demore. See, Diop v. ICE/Homeland Sec., 656 F.3d 221, 234 (3d Cir. 2011).

There is nothing in the present record that would support an argument that Petitioner poses any immediate danger to the community. The only crime Petitioner has ever been convicted of was DWI Test Refusal in 2004. While Petitioner was arrested and charged with Fifth Degree Assault (Domestic) and two counts of First Degree Criminal Sexual Conduct in 1997, the Fifth Degree Assault (Domestic) charge was dismissed and Petitioner was acquitted of the First Degree Criminal Sexual Conduct charges. (See, e.g., Pet. [Docket No. 1] ¶¶ 4, 34). Additionally, as noted above, Petitioner was also arrested for First Degree Criminal Sexual Conduct in 2018, however, Petitioner was never charged with any crime resulting from that arrest. (See, e.g., Id. ¶¶ 13, 43).

---

[5] The Supreme Court described the "brief period" that it held valid: "in the majority of cases," detention pursuant to § 1226(c) in 2003 "lasts for less than . . . 90 days." Demore, 538 U.S. 510 at 529. In the overwhelming majority of cases—85%—"removal proceedings are completed in an average time of 47 days and a median of 30 days." Id. "In the remaining 15% of cases," in which an appeal in Demore was taken, "appeal takes an average of four months." Id. The Court thus concluded that "[i]n sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases." Id. at 530.

11

Nor is there anything in the record that indicates to this Court that Petitioner is a flight risk. In the twenty-eight years since Petitioner was first paroled into the United States, there is no indication that he ever attempted to evade authorities. Rather, any delay in the present removal proceedings, which were initiated in 1997, is attributable to the Government's decision to have them twice administratively closed and not to pursue them. (See, e.g., Id. ¶¶ 10, 36, 39). In addition, Petitioner has a spouse and child, both of whom are U.S. citizens. (See, e.g., Id. ¶¶ 41, 47).

Furthermore, detentions under § 1225(b) of a lesser extended length than in the present case have been found to violate the 5th Amendment Due Process Clause. See, Jamal A., 358 F. Supp. 3d at 856 (19 months); see also, Tuser E. v. Rodriguez, 370 F. Supp. 3d 435, 443 (D.N.J. 2019) (20 months); Lett v. Decker, 346 F. Supp. 3d 379, 382 (S.D.N.Y. 2018) (10 months); Perez v. Decker, 18-cv-5279 (VEC), 2018 WL 3991497, at *6 (S.D.N.Y (Aug. 20, 2018) (9 months); Destine v. Doll, No. 3:17-cv-1340, 2018 WL 3584695, at *5 (M.D. Pa. July 26, 2018) (21 months); Salazar v. Rodriguez, No. 17-1099 (JMV), 2017 WL 3718380, at *6 (D.N.J. Aug. 29, 2017) (12 months).

Therefore, the current and ongoing twenty-six plus month length of Petitioner's detention without ever having been provided a bond hearing weighs heavily in favor of granting relief.

Second, courts consider how long the detention is likely to continue in the absence of judicial relief. In estimating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals. Ly, 351 F.3d at 272 ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability."). In Muse, for example, the IJ denied the petitioner's claim for relief and the petitioner promptly appealed the decision to the BIA. 409 F. Supp. 3d at 717. The Court found that the petitioner could potentially be detained for up to another 18 months

because, at the time he filed his petition, he had just appealed the IJ's decision. Thus, the Court reasoned that if he received an adverse decision from the BIA, then he could appeal the BIA's decision to the Eighth Circuit. Id. Therefore, the Court concluded that the potentially lengthy appeals process weighed in the petitioner's favor. Id.

In the present case, the future length of the ongoing detention also supports granting Petitioner relief. Like in Muse, Petitioner here could easily be detained for another year or more by the time all appeals have been exhausted. IJ Wood initially denied Petitioner's claims for relief on February 27, 2019, after Petitioner had already been civilly detained by DHS and ICE for over a year. (See, Ex. T [Docket No. 1-21]). Petitioner promptly appealed the decision to the BIA. (See, e.g., Pet. [Docket No. 1] ¶¶ 15, 45]). The BIA affirmed IJ Wood's decision in part, sustained Petitioner's appeal in part, and withheld ruling on Petitioner's arguments that IJ Wood erred in denying his application for asylum. (Ex. Y [Docket No. 1-26]). On remand, IJ Wood denied Petitioner's claims for relief on November 26, 2019, after Petitioner had already been civilly detained for nearly twenty-two months. (See, Ex. DD [Docket No. 1-31]). Petitioner promptly appealed the decision to the BIA. (See, Ex. EE [Docket No. 1-32]). As of the date of the filing of Petitioner's Reply before this Court on March 9, 2020, Petitioner's appeal to the BIA had still not been decided. (Pet.'s Reply, [Docket No. 12], at 7). If Petitioner loses his appeal, it is likely to assume he will exercise his lawful right to seek review in the Eighth Circuit, and it may well be another year before he gets a decision there. See, Jamal A., 358 F. Supp. 3d at 859; Muse, 409 F. Supp. 3d at 717. Thus, because it is likely that Petitioner will be detained for well more than another year by the time all appeals have been exhausted, this factor, too, weighs strongly in his favor.

Third, courts consider the conditions of the alien's detention. Aliens held under § 1225(b) are subject to civil detention rather than criminal incarceration. See, Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469, 477 (3d Cir. 2015); see also, Jamal A., 358 F. Supp. 3d at 860. "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." Jamal A., 358 F. Supp. 3d at 860 (quoting Muse, 409 F. Supp. 3d at 717); see also, Chavez-Alvarez, 783 F.3d at 477. And "[a]s the length of the detention grows, the weight given to this aspect of his detention increases." Chavez-Alvarez, 783 F.3d at 477. Furthermore, courts in this District have found that this factor weighs in a petitioner's favor where the petitioner is being held in a county jail. See, e.g., Jamal A., 358 F. Supp. 3d at 860; Muse, 409 F. Supp. 3d at 717.

Accordingly, this third factor also weighs in Petitioner's favor. Currently, Petitioner, who is only civilly committed, is being detained in the Carver County Jail, a criminal detention facility, in Chaska, Minnesota. Like in Jamal A., supra, Petitioner here is being detained in a county jail alongside inmates serving criminal sentences. Thus, because the current conditions of Petitioner's detention strongly resemble penal confinement, this factor also weighs in Petitioner's favor.

Fourth, courts consider the nature and extent of any delays in the removal proceedings caused by the alien. "An alien should not be punished for raising legitimate defenses to removal." Muse, 409 F. Supp. 3d at 717; see also, Ly, 351 F.3d at 272 ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him."). Indeed, "the mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition." Hernandez v. Decker, No. 18-cv-5026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y.

July 25, 2018). Courts should, however, be "sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." Ly, 351 F.3d at 272. If courts did not take into account the alien's role in delaying removal proceedings, they "would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release." Id.

Here, in opposition to the present petition, the Government has not addressed any of Petitioner's arguments in the pending appeal from the IJ's order of removal. See, e.g., Hernandez, 2018 WL 3579108, at *9 (noting that the "government's failure to parse [petitioner's] arguments overlooks a key part of a fact-dependent inquiry."); Chavez-Alvarez, 783 F.3d at 477 (noting that while the respondent "undoubtedly is responsible for choosing to challenge his removal by raising complicated issues that have taken a lot of time to argue and decide . . . this does not undermine his ability to claim that his detention is unreasonable."); Gordon v. Shanahan, No. 15 Cv. 261, 2015 WL 1176706, at *5 (S.D.N.Y. Mar. 13, 2015) ("Moreover, it would be unreasonable to penalize [petitioner] for exercising his right to challenge removal by requiring him to be detained while he exercises that right . . . ."). The Government, consequently, does not argue in the present case that any of Petitioner's appeals are frivolous. Rather, the Government here only very superficially argues that "some portion of the length of [Petitioner's] detention is attributable to his own delay as he has sought continuances and extensions at the administrative level." (Gov.'s Response, [Docket No. 7], at 31). As previously mentioned, however, "[a]n alien should not be punished for raising legitimate defenses to removal." Muse, 409 F. Supp. 3d at 717.

15

Based on the record presently before the Court, the continuances sought and received by Petitioner were legitimate, sought upon advice of counsel, and were not dilatory or frivolous. Accordingly, it does not appear that the delay in the resolution of Petitioner's removal proceedings is in any material way attributable to dilatory conduct by Petitioner. Thus, this factor too weighs in Petitioner's favor.

Fifth, courts consider the nature and extent of any delays in the removal proceedings caused by the Government. "Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." Sajous v. Decker, 18-cv-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

There is nothing in the present record to suggest that the Government has engaged in any dilatory tactics that have extended Petitioner's current detention.[6] Similar to Petitioner, the Government has merely made non-frivolous arguments in support of its position and the Petitioner has not argued otherwise. Indeed, the Government prevailed with the IJ twice. This fifth factor thus weighs in the Government's favor.

Lastly, courts consider the likelihood that the proceedings will culminate in a final removal order. While not singularly determinative, the more likely that the alien will ultimately be removed, the longer the detention that will be deemed reasonable. See, Muse, 409 F. Supp. 3d at 718.

This sixth factor does not weigh strongly in either party's favor in the present case. The fact that the IJ has twice ordered that Petitioner be removed does not help Petitioner. (E.g., Ex. T [Docket No. 1-21]; Ex. DD [Docket No. 1-31]). However, Petitioner has twice appealed those

---

[6] However, as previously noted, the Government's decision to twice seek administrative closure and not to pursue Petitioner's removal proceedings, originally initiated in August 1997, caused the present removal proceedings to be delayed for over twenty years. (See, e.g., Pet. [Docket No. 1] ¶¶ 10, 36, 39). During that prolonged delay, Petitioner maintained employment, married a U.S. citizen, and had a daughter who is also a U.S. citizen. (See, e.g., Id. ¶¶ 8, 41, 49, 47, 88).

16

decisions to the BIA. (See, e.g., Pet. [Docket No. ¶¶ 16, 45). The first appeal resulted in remand, without the BIA ruling on all of Petitioner's arguments, and the second appeal is still pending.

In conclusion, the great weight of the present record (four of the aforementioned six factors) weigh strongly in Petitioner's favor. The length of Petitioner's now twenty-six plus month detention is undoubtedly highly suspect. See, Diop, 656 F.3d at 234 ("continued detention without [any] inquiry into its necessity becomes more and more suspect" as detention continues past the six-month time frame described in Demore).

This Court therefore finds that continuing to detain Petitioner beyond the twenty-six plus months he has already been detained, without a bond hearing, violates his due process rights under the Fifth Amendment.[7]

For relief, Petitioner seeks immediate release or, in the alternative, an order requiring the IJ to conduct a bond hearing at which the Government must show by clear and convincing evidence that Petitioner presents a risk of flight or danger to the community. (Pet. [Docket No. 1], at 39, ¶¶ 4–5). Courts in this District, however, have regularly declined to grant immediate release and held that "the appropriate remedy is to order the agency detaining [the alien] to hold a bond hearing in the very near future." Tua Mene Lebie B. v. Barr, No. 19-cv-2177 (JNE/HB), 2019 WL 5747817, at *6 (D. Minn. Sept. 18, 2019), report and recommendation adopted by 2019 WL 5715703 (D. Minn. Nov. 5, 2019); see also, Abshir H.A. v. Barr, No. 19-1033 (PAM/TNL), 2019 WL 3719414, at *3 (D. Minn. Aug. 7, 2019). Moreover, courts in this District have consistently "declined to 'render an advisory opinion'" on the burden of proof to be applied at the bond hearing and held that "the burden of proof and the quantum of proof at the bond hearing are decisions for the

---

[7] Because the Court has determined that Petitioner's continued detention violates his due process rights under the Fifth Amendment, it is not necessary to address Petitioner's argument that his continued detention without a bond hearing violates the Eighth Amendment.

immigration judge in the first instance." Tua Mene Lebie B., 2019 WL 5747817, at *6 (quoting Bolus A.D. v. Sec'y of Homeland Sec., 376 F. Supp 3d 959, 963 (D. Minn. 2019)); see also, Abshir H.A., 2019 WL 3719414, at *3; Jamal A., 358 F. Supp. 3d at 860 n.6; Muse, 409 F. Supp. 3d at 718. This Court agrees that a bond hearing is the appropriate remedy and that the burden of proof and quantum of proof are a decision left for the IJ to determine.

Accordingly, this Court recommends ordering that the IJ conduct a bond hearing no later than twenty-one (21) days from the date this Report and Recommendation may be adopted. At that bond hearing, the parties must be allowed to present evidence and argument about whether Petitioner is a danger to the community and whether Petitioner is likely to flee if he is not detained. Such a hearing will protect both Petitioner's rights under the 5th Amendment Due Process Clause and the Government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1225(b). See, Jamal A., 358 F. Supp. 3d at 860 & n.6; see also, Portillo v. Hott, 322 F. Supp. 3d 698, 708–09 (E.D. Va. 2018) ("Moreover, the government's interest in guarding against [the alien's] flight can be substantially protected even if [the alien] is given an individualized bond hearing and released on bond because a critical factor that the IJ will be forced to consider is whether [the alien] is a flight risk and whether there are conditions of release that could reasonably secure his future appearance.").

Accordingly, this Court recommends that Petitioner's Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED in part** and **DENIED in part**.

### III.     CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Jenkins C.'s Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED in part** and **DENIED in part** as set forth herein;

2. To the extent that it seeks a bond hearing, the Court recommends that Jenkins C.'s Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED**, and the IJ be required to conduct a bond hearing <u>no later than</u> twenty-one (21) days from the date that this Report and Recommendation may be adopted;[8]

3. To the extent that it seeks Petitioner's immediate release, the Court recommends that Jenkins C.'s Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**;

4. To the extent that it seeks an advisory order regarding the burden of proof at Petitioner's bond hearing, the Court recommends that Jenkins C.'s Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**; and

5. To the extent that it seeks an award of attorneys' fees, costs, and other disbursements, the Court recommends that Jenkins C.'s Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**.

Dated: May 4, 2020                              s/Leo I. Brisbois
                                                Leo I. Brisbois
                                                U.S. MAGISTRATE JUDGE

---

[8] If, after adoption of this Report and Recommendation, a bond hearing is <u>not</u> timely conducted pursuant hereto, then the Petitioner shall be released no later than thirty (30) days from the date that this Report and Recommendation may be adopted.

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations, and a party may respond to those objections after being served a copy of the objections. <u>See</u>, Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c). Normally, the period for filing objections and the period to respond to those objections is typically 14 days each. However, given the present length of the Petitioner's current detention, the period for filing and serving any specific written objections to the Report and Recommendation shall be 7 days, and the period to respond to those objections shall be 7 days.